A06A1906. CARDENAS v. THE STATE.
(638 SE2d 866)

ADAMS, Judge.

Jorge Cardenas appeals his conviction and sentence on ten counts of criminal conduct. On appeal he contends the evidence was insufficient to support the verdict. To sustain a conviction, the evidence must be sufficient to enable a rational trier of fact to find the appellant guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Construed in favor of the verdict, the evidence shows that as of the time of trial in March 2005, Cardenas was married to Maria Cardenas, and they had eight children, including M. B. (now age twenty), L. (age eighteen), and D. (age eleven). The family lived in a small apartment in DeKalb County from 1998 through 2004. The apartment had two bedrooms, and the four oldest children slept in one. The parents and the four youngest children slept in the other room in two adjoining beds. The mother and the three youngest slept in the large bed, and D., a girl, and the defendant slept in the smaller bed — the defendant sleeping in the nude. When D. was about four, Maria began to work and Cardenas began to stay home to take care of the children.

On the afternoon of July 9, 2003, Cardenas came into the apartment in a rage and accused Maria of having a boyfriend. He tore up the apartment and began pacing with a knife and talking about "killing, killing, killing." During his rage he said that nobody was going to live through the night and that he was going to cut off their heads and burn the house down. He unplugged the telephones and started kicking his wife. Finally, Cardenas grabbed a big chair and

threatened to throw it at her. All the children were present in the small house at the time, and the small children hid in a closet. L. called the police, and they arrested Cardenas.

After the police left, Maria's daughter M. B. told her mother that when she was ten or twelve years old, her father repeatedly raped her when she was home from school with a cast on her leg. Cardenas had told M. B. that if she told anyone about the incidents he would kill the entire family.

Then D. told the family that her father had done something bad to her. She explained that Cardenas had touched her behind with his penis when they were in bed together. She explained that sometimes it hurt. But she could not remember whether his private went inside or outside her bottom. She would tell her father to stop but he would not. She felt "disgusting" afterward. Her father said that if she told anyone he would kill her. Her father also hit her with a belt, and made the same threat. She could not remember the first or last time that it happened. But she told authorities that it had occurred continuously for six years. She told essentially the same story to several others. D. also reported that her father had kissed her on the lips and that it was "disgusting."

The next day, L. called authorities. A medical examination on July 10, 2003, revealed that D.'s rectum had evidence of trauma that was consistent with sexual activity but also consistent with other things.

Months later, M. B. attempted to commit suicide the day her mother bonded her father out of jail. Then on March 2, 2004, Maria agreed to visit Cardenas in his hotel room in DeKalb County. Once there he locked the door, became angry, and said that he was going to have sex with her. He unplugged the telephones, destroyed the batteries to her cell phone, ripped her shirt, and threw her on the bed. He then had sex with her both in her vagina and anus, against her will. Afterward he got angry, said that he was going to kill her, and started to fill the tub with water. He then took a pillow and held it on her face so she could not breathe. He eventually let her leave, but he went with her and stayed with her for more than a day. She eventually got out of his presence and sought help. The police then intervened. Maria had bruising on her face and neck resulting from the incident. At trial, Cardenas admitted detaining his wife in the hotel room. We will address only those arguments raised by Cardenas in his brief. See Court of Appeals Rule 25 (c).

1. The evidence was sufficient to support the verdict of child molestation on D. — Count 1 — by placing his mouth on hers with the intent to satisfy his sexual desires. A pediatric nurse practitioner who examined D. testified that D. told her that her father kissed her on the lips and that it was "disgusting." The child also testified that after her

father touched her behind with his penis she felt "disgusting." Given her use of the same word to describe the kiss and the other sexual conduct together with the evidence of other sexual conduct by Cardenas toward her, the jury was authorized to conclude that under the circumstances, the kiss was an "immoral or indecent act" done "with the intent to arouse or satisfy [Cardenas's] sexual desires." OCGA § 16-6-4 (a). See *Bryson v. State*, 282 Ga. App. 36, 37 (1) (b) (638 SE2d 181) (2006) (context of kiss together with other acts of molestation sufficient).

2. Cardenas contends the State did not prove venue with regard to Count 1 or Count 2 — aggravated child molestation for putting his penis on D.'s anus. "The State may establish venue by whatever means of proof are available to it, and it may use both direct and circumstantial evidence." *Jones v. State*, 272 Ga. 900, 902-903 (2) (537 SE2d 80) (2000).

The indictment alleged that the two crimes had been committed sometime between March 1997 (when D. turned four years old) and July 9, 2003. The evidence at trial showed that the family lived in the apartment in DeKalb County from June 1998 through 2004. The evidence showed that Cardenas committed aggravated child molestation on D. continuously, beginning when the child was four years old and in kindergarten but continuing through July 9, 2003. Evidence that the defendant committed the crimes in DeKalb County even though he may have also committed them elsewhere is sufficient to establish venue. *Henry v. State*, 274 Ga. App. 139, 143 (5) (616 SE2d 883) (2005). Therefore, venue was established with regard to Count 2.

But with regard to Count 1, there was simply no evidence presented as to when or where the incident involving the kiss occurred. Nor was there evidence that the act was ongoing over a period of years. Accordingly, venue for that offense has not been established. The conviction on Count 1 must be reversed.

3. Cardenas contends that the convictions of cruelty to children, terroristic threats (two counts), simple battery, rape, aggravated sodomy, aggravated assault, and false imprisonment were not supported by sufficient evidence because the evidence came from witnesses who had a motivation to lie or the witnesses gave inconsistent testimony. But questions regarding the weight of the evidence and the credibility of witnesses are for the jury. See *Ramirez v. State*, 276 Ga. 249, 250 (1) (577 SE2d 558) (2003); *Brown v. State*, 265 Ga. App. 613 (594 SE2d 770) (2004).

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 17, 2006.

*Carl P. Greenberg*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.