## A11A1704. OBEGINSKI v. THE STATE.
(722 SE2d 162)

DILLARD, Judge.

Following a jury trial, Aaron Leigh Obeginski was convicted on one count of aggravated child molestation and two counts of child molestation. Thereafter, he filed a motion for new trial, which the trial court denied. Obeginski argues on appeal that the evidence was insufficient to support his convictions and that his attorney rendered ineffective assistance of counsel. For the reasons noted infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that on the morning in question, Obeginski was exercising his visitation rights with the victim, his seven-year-old daughter. After playing at the park, during which time Obeginski was drinking alcohol from the trunk of his vehicle, Obeginski drove the victim to his residence. The victim reported being scared during the drive due to Obeginski's behavior, stating specifically that he was speeding and saying "woo hoo!"

As Obeginski sped into the driveway, the noise caught the attention of the home's owner, Darlene Harrington, and her boyfriend, Jack Dunevent.[2] Both immediately noticed that Obeginski appeared heavily intoxicated and unsteady on his feet as he exited the vehicle. They then noticed that the victim was in the car as well.

Alarmed at Obeginski's drunken state, Dunevent "got onto him" for driving while intoxicated with a young child in the car and directed Harrington to locate the victim's mother and inform her that Obeginski was in no condition to care for the child. Dunevent also disabled Obeginski's car so that he could not leave the residence.

---

considered in determining prejudice).

[1] *Westbrooks v. State*, 309 Ga. App. 398, 399-400 (1) (710 SE2d 594) (2011).

[2] Obeginski's residence consisted of a room that he rented in a house also inhabited by several other individuals.

A third resident of the house also testified as to Obeginski's apparent drunkenness.

Harrington located the victim's mother, whom Harrington did not know, through a mutual friend and informed her of the troubling circumstances. The victim's mother arrived at the residence a short time later and Harrington led her to Obeginski's room. And upon opening the door to the bedroom, they observed Obeginski asleep and the victim lying next to him in the bed, crying. The victim immediately reached for her mother, who lifted her from the bed. She was naked from the waist down and told her mother through tears that Obeginski had "licked [her] bottom" and had "kissed [her] like a girl," "with tongue." The victim repeated the statements to Harrington, and the police were called.

Upon their arrival, the responding officers observed the crying victim and noted that she had nothing more than an afghan covering the bottom half of her body. As they entered Obeginski's bedroom, they saw the victim's panties lying next to the bed and Obeginski fast asleep. The officers then pulled the blankets off of Obeginski as they attempted to wake him and noticed that he was naked. At this point, the officers testified that Obeginski became aggressive toward them as he awoke and noted that he smelled of alcohol and slurred his speech.

An investigator subsequently came to the residence and, pursuant to a search warrant, searched Obeginski's bedroom and vehicle. He located and photographed the victim's panties on the floor next to the bed, her pants in a different area of the bedroom, and a bottle of vodka in the closet. The investigator also located three bottles of vodka in the trunk of Obeginski's vehicle. The investigator reported that when he arrived at the house, Obeginski's speech was so slurred that he could not understand him.

The victim was subjected to a forensic interview that was videotaped and played for the jury. In it, she repeated the same allegations she made to her mother and Harrington. The victim also discussed how Obeginski was drinking alcohol at the park and that she was scared by the manner in which he drove them to his home. The victim also clarified that she was referring to her vagina when she stated that Obeginski "licked [her] bottom"; explained that Obeginski stuck his tongue in her mouth and licked her face when he kissed her; and elaborated that during the ordeal, Obeginski directed her to place her hand on his penis and "move it up."

Thereafter, Obeginski was convicted on one count of aggravated child molestation and two counts of child molestation. He then filed a motion for new trial, which the trial court denied. This appeal follows.

1. Obeginski maintains that the evidence presented at his trial

was insufficient to sustain his convictions on one count of aggravated child molestation[3] and two counts of child molestation.[4] We disagree.

As indicted, Count 1 charged Obeginski with aggravated child molestation in that he did "commit an immoral and indecent act involving sodomy, to wit: [he] placed his mouth and tongue on the vagina of [the victim], a child under the age of 16 years, with the intent to arouse and satisfy [his] sexual desires." Count 2 charged him with child molestation in that he did "commit an immoral and indecent act, to wit: [he] placed the hand of [the victim], a child under the age of 16 years, on his penis, with the intent to arouse and satisfy [his] sexual desires. . . ." Count 3 charged Obeginski with child molestation in that he did "commit an immoral and indecent act, to wit: [he] kissed and licked the face of [the victim], a child under the age of 16 years old, with the intent to arouse and satisfy [his] sexual desires. . . ."

The child victim's testimony alone authorized Obeginski's convictions on the crimes charged, and her statements were further corroborated by her mother, Obeginski's housemates, and the responding law-enforcement officers.[5] Furthermore, there is simply no merit to Obeginski's assertion that the State failed to prove that he engaged in the charged conduct with the intent to arouse and satisfy his sexual desires. The determination of a criminal defendant's intent is a factual question that, by its nature, often must be inferred.[6] And in the face of the evidence set forth supra, it strains credulity for Obeginski to claim that he had any intent other than to satisfy his own depraved sexual proclivities.[7]

2. Obeginski further contends that his attorney rendered inef-

---

[3] *See* OCGA § 16-6-4 (c) ("A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy.").

[4] OCGA § 16-6-4 (a) (1) ("A person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person. . . .").

[5] *See, e.g.*, OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Vaughn v. State*, 301 Ga. App. 391, 392 (687 SE2d 651) (2009) ("The victim's testimony, standing alone, was sufficient to prove the charged crimes."); *Hubert v. State*, 297 Ga. App. 71, 72 (1) (676 SE2d 436) (2009) (same).

[6] *See* OCGA § 16-2-6 ("A person will not be presumed to act with criminal intention but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."); *Phillips v. State*, 269 Ga. App. 619, 629 (8) (604 SE2d 520) (2004) ("Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this." (punctuation omitted)).

[7] *See Andrew v. State*, 216 Ga. App. 427, 427 (454 SE2d 542) (1995) (noting that it can be "inferred from the fact that the defendant exposed himself to a child that he had the intent to arouse or satisfy his sexual desires").

fective assistance of trial counsel because she failed to object to testimony from Obeginski's housemates that he drove with the victim in his vehicle while he was under the influence of alcohol. Although Obeginski concedes that testimony related to his intoxication at the time of the incident was admissible as part of the res gestae, he nevertheless contends that his driving while intoxicated constituted evidence of an independent, uncharged crime that amounted to improper character evidence.

In order to establish that he received ineffective assistance of trial counsel, Obeginski "must show both that his trial counsel's performance was deficient and that the deficiency prejudiced his defense such that there is a reasonable probability that the outcome at trial would have been different."[8] But here, we need not even consider whether Obeginski's attorney was deficient for failing to object to the challenged testimony, because Obeginski cannot establish that he was prejudiced by her failure to do so.[9] The victim's videotaped forensic interview describing the events surrounding the crime was admissible as substantive evidence under the Child Hearsay Statute.[10] Specifically, the victim described how Obeginski drank alcohol while the two were at the park, and then drove home in a manner that scared her. Thus, any additional testimony by Obeginski's housemates that he appeared to be intoxicated when he arrived home was cumulative of other properly admitted evidence. And because "[t]he failure to object to evidence which is merely cumulative of other admissible evidence does not amount to ineffective assistance of counsel,"[11] Obeginski's claim necessarily fails. Accordingly, we affirm the trial court's denial of Obeginski's motion for new trial.

*Judgment affirmed. Mikell, C. J., and Boggs, J., concur.*

DECIDED JANUARY 13, 2012 —

*Amanda R. Flora*, for appellant.

*Layla H. Zon, District Attorney, Melanie M. Bell, Assistant District Attorney*, for appellee.

---

[8] *Bearfield v. State*, 305 Ga. App. 37, 42 (3) (699 SE2d 363) (2010).

[9] *Morris v. State*, 284 Ga. 1, 4 (3) (662 SE2d 110) (2008) ("If an appellant fails to meet his burden of proving either prong of the . . . test, the reviewing court does not have to examine the other prong.").

[10] *See* OCGA § 24-3-16; *Lamb v. State*, 293 Ga. App. 65, 66 (666 SE2d 462) (2008).

[11] *Woods v. State*, 304 Ga. App. 403, 411 (4) (a) (ii) (696 SE2d 411) (2010); *accord Morris*, 284 Ga. at 4 (3); *Thomas v. State*, 296 Ga. App. 170, 173-74 (2) (c) (674 SE2d 56) (2009).